[No. B026091. Second Dist., Div. One. July 6, 1988.]

VIRGINIA McMARTIN et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

[No. B026238. Second Dist., Div. One. July 6, 1988.]

BABETTE J. SPITLER et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

James H. Davis, Eliseo D. W. Guana and William Waysman, for Plaintiffs and Appellants.

DeWitt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Patrick T. Meyers, Roger H. Grambo and James W. Owens, Deputy County Counsel, Cotkin, Collins & Franscell and David D. Lawrence, for Defendants and Respondents.

OPINION

SPENCER, P. J.—

### INTRODUCTION

In B026091, plaintiffs Virginia McMartin and Peggy Ann Buckey appeal from an order denying their petitions for relief from the government tort claim filing statutes pursuant to Government Code section 946.6 and from an order denying their motions for reconsideration. In B026238, plaintiffs Babette J. Spitler, Donald D. Spitler, Chad A. Spitler and Wendi L. Spitler appeal from similar orders denying their petitions and reconsideration of the denial. All plaintiffs sought to file claims against defendants County of Los Angeles and City of Manhattan Beach.

### STATEMENT OF FACTS

All the claims arise out of the prosecution of Virginia McMartin (McMartin), Peggy Ann Buckey (Buckey) and Babette J. Spitler (Spitler) in what has become known as the "McMartin Pre-School Child Molestation Case," which began in 1984. Criminal charges against the three were dismissed in January 1986.

On March 12, 1986, Spitler, her husband Donald D. Spitler (Donald), and their children Chad A. Spitler (Chad) and Wendi L. Spitler (Wendi) filed claims with the County of Los Angeles (County) alleging injury due to tortious conduct by the district attorney's office, namely negligent police investigation and unconstitutional police action. Spitler claimed injury due to false arrest, false imprisonment, battery, invasion of privacy, intentional and negligent infliction of emotional distress, violation of her civil rights, libel and slander, malicious prosecution and abuse of process, continuing from March 6, 1984, through January 21, 1986. Chad and Wendi claimed the same injuries continuing from April 24, 1984, through March 3, 1986.

Donald claimed invasion of privacy, intentional and negligent infliction of emotional distress, negligence and violation of his civil rights, continuing from March 6, 1984, through March 3, 1986. The County denied all the claims as untimely on May 2, 1986; plaintiffs were informed no application for late claim would be considered.

Donald, Chad and Wendi filed similar claims with the City of Manhattan Beach (City) on March 12, 1986. The claims were returned as untimely, the City indicating plaintiffs could apply for leave to present late claims. They filed such applications, which were then denied on May 7, 1986.

McMartin and Buckey filed claims with the County on March 31, 1986, alleging injury resulting from the County's negligent police investigation and unconstitutional police action, from March 6, 1984, through January 21, 1986. The claimed injuries were false arrest, false imprisonment, battery, invasion of privacy, intentional and negligent infliction of emotional distress, violation of civil rights, libel and slander, malicious prosecution and abuse of process. The claims were denied as untimely on May 2, 1986; plaintiffs were informed no application for late claim would be considered.

Spitler, Donald, Chad and Wendi petitioned the superior court for relief under Government Code section 946.6 on May 30, 1986; they also filed suit against defendants and others on June 12. McMartin and Buckey filed suit on May 29 and petitioned the court for relief on September 26, 1986. The cases were consolidated for hearing on December 30, 1986.

With regard to Spitler, Donald, McMartin and Buckey, the trial court ruled they had not shown by competent evidence any excuse for their failure to file their claims within 100 days after the alleged wrongful conduct. However, to the extent such conduct fell within 100 days of their filing the claims, they could litigate the claims in their suits against defendants. Their petitions were then denied on the merits. As to Chad and Wendi, their petitions were denied without prejudice to their making a showing under *Hernandez* v. *County of Los Angeles* (1986) 42 Cal.3d 1020 [728 P.2d 1154].

The County prepared a notice of ruling in each action; the notices simply stated the petitions of Spitler, Donald, McMartin and Buckey were denied with prejudice, those of Chad and Wendi were denied without prejudice. On January 29, 1987, plaintiffs moved to strike the notices of ruling on the ground they did not correctly reflect the court's decision or, in the alternative, for reconsideration based upon additional evidence. The motions to strike were denied. The motions for reconsideration were denied on two grounds: they were not timely and no new facts were presented which could

not have been presented at the original hearing with the exercise of reasonable diligence.

## CONTENTIONS

### I

Plaintiffs contend the Davis Amendment to Government Code section 945.3 could not constitutionally be applied to them, in that it is void as an irrational and vicious classification and it compels testimony from criminal defendants in violation of their right to silence.

### II

Plaintiffs also contend Chad's and Wendi's claims were tolled because of their age, so as to make them timely when filed.

## DISCUSSION

### I

■■■ Plaintiffs contend the Davis Amendment to Government Code section 945.3 could not constitutionally be applied to them, in that it is void as an irrational and vicious classification, and it compels testimony from criminal defendants in violation of their right to silence. We disagree.

Government Code section 945.4[1] provides a suit for money or damages may not be brought against a local public entity until a written claim therefor has been presented to and acted upon by the entity. A claim for personal injury must be presented to the entity within 100 days after the cause of action has accrued. (§ 911.2.) If the claim is not presented within 100 days, a written application for leave to present the claim may be made to the public entity within a reasonable time, not to exceed one year after the accrual of the cause of action. (§ 911.4.) The public entity must then grant or deny the application. (§ 911.6, subd. (a).) If the application is denied, section 946.6, subdivision (a), allows a petition to be made to the court for an order relieving the petitioner from the provisions of section 945.4.

Section 945.3 was originally enacted in 1981 (Stats. 1981, ch. 285, § 1, p. 1403) and provided, "in substance, a person charged with a crime could not bring a civil action for damages against a peace officer or the public

---

[1] All section references are to the Government Code.

entity employing the peace officer based on the conduct of the police officer relating to the criminal charge, 'while the charges against the accused are pending before a justice, municipal, or superior court.' The second paragraph of the statute provided that 'Any applicable statute of limitations for filing and prosecuting these claims shall be tolled during the period that the charges are pending' before the court." (*Mohlmann* v. *City of Burbank* (1986) 179 Cal.App.3d 1037, 1042 [225 Cal.Rptr. 109], review den. July 9, 1986.) ■ The purpose of the statute was " 'to eliminate the use of civil damage complaints as plea bargaining levers' " and possibly "to prevent use of civil false arrest suits as a device to inquire into prosecutorial materials and investigative information while the criminal charge is pending." (*Ibid.*)

■ The section was amended in 1983 by Senate Bill No. 67, authored by state Senator Ed Davis. (Stats. 1983, ch. 272, § 1, p. 822.) The amendment substituted "actions" for "claims" in the second paragraph, added a third paragraph, inapplicable here, eliminating certain criminal proceedings from the statute's purview, and added a fourth paragraph providing: "Nothing in this section shall prohibit the filing of a claim with the board of a public entity, and this section shall not extend the time within which a claim is required to be presented pursuant to Section 911.2." (See *Mohlmann* v. *City of Burbank, supra,* 179 Cal.App.3d at p. 1043.)

The *Mohlmann* court was not furnished with and was unable to locate any legislative history regarding the amendment, but it appeared to the court the original version of section 945.3 may have been viewed as taking away from the claim filing requirement. (*Id.,* at pp. 1042-1043.) The original version tolled the "statute of limitations for filing and prosecuting these claims." While claim filing statutes are not technically statutes of limitations, they have the same purpose and effect. (*Id.,* at p. 1043.) Thus, section 945.3 was ambiguous, in that it was not clear whether it applied to the claim filing statutes. (*Id.,* at pp. 1043-1044.) The amendment made it clear the tolling provisions did not apply to claim filing requirements, only to prosecuting civil actions.

Plaintiffs have presented this court with two documents reflecting the legislative history of Senate Bill No. 67. One, a report from the Assembly Committee on Judiciary, notes: "Apparently there is some confusion as to whether, as currently drafted, the prohibition [in section 945.3] applies to *claims* that must be presented to and rejected by a public entity before a civil suit can be filed (claims required by Government Code Section 911.2). The bill would clarify this confusion by specifically stating that it would not prohibit the filing of such claims or toll the time period in which these claims must be filed." (Italics original.) The other document, an excerpt from a report by the Senate Committee on Judiciary, states: "This bill

would also prohibit the filing of a claim in that situation [specified in paragraph one of section 945.3]."

Plaintiffs state: "Although both the Senate and Assembly reports stated that they were clarifying ambiguities in existing law, they came to diametrically opposed conclusions as to what the new bill supposedly did. . . . (One might note with some consternation that if the two houses of the Legislature could not agree on what they were doing, and the Court of Appeal [in *Mohlmann*] could not find even the disagreement, what level of knowledge about when the tort claim should have been filed can be justifiably attributed to the incarcerated [plaintiffs] or even their counsel?)"

The Senate report does appear to conflict with the Assembly report. However, the Senate report is not dated, so it cannot be determined whether it was written before the bill went to the Assembly or after it was returned. This fact is significant, in that it was the Assembly which added to the Senate bill the paragraph which became paragraph four of section 945.3. After the Assembly amendment to Senate Bill No. 67, its meaning with regard to the claim filing requirements became perfectly clear.

Moreover, the Spitler plaintiffs' attorney was not misled by an ambiguous amendment. He stated in his declaration in support of the plaintiffs' petitions that it was not until after the claims were rejected by defendants that he became aware of the Davis amendment. Counsel for McMartin and Buckey made no claim of having been misled by the amendment.

Plaintiffs argue the Davis amendment is unconstitutional, in that it does not have a rational relationship to a legitimate state purpose. *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575 [121 Cal.Rptr. 842] discusses the constitutionality in general of the claim filing statutes. ▮ It notes a well established rule that where the right to sue a state or its subdivisions is granted, the state may impose prerequisites to the commencement of a suit. (At p. 579.) The Tort Claims Act, section 815 et seq., sets out such statutory prerequisites. (*Ibid.*)

Plaintiff in *Stanley* challenged the act on due process and equal protection grounds. Dealing with the latter, the court observed "the equal protection clause does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed on another. ▮ The classification is constitutionally infirm only if it bears no rational relationship to the achievement of a legitimate state objective. State Legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality. A statutory

discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it [citations].

"When viewed in light of the foregoing principles the California claims statute withstands the constitutional challenge leveled against it, and the classification made between governmental and nongovernmental tort victims may be said to have a fair and substantial relation to the object of the legislation and to promote a number of legitimate state interests. As has been pointed out, one of the reasons for this type of legislation is to prevent public funds from being consumed in needless litigation by affording the public entity an opportunity for amicable adjustment before it is charged with the cost of suit and other expenses. Another reason is that it provides the public body responsible for making preparations for the fiscal year with an opportunity to be informed in advance as to the indebtedness or liability that it may be expected to meet. A third reason is to give the public entity prompt notice of a claim in order to enable it to investigate the merits of the claim while the evidence is still fresh and the witnesses are available [citations]. The fourth reason is to afford the public entity a chance to correct the conditions or practices which gave rise to the claim. . . .

"Recognizing that for the aforesaid weighty considerations the classification in the claims statute is entirely justifiable and reasonable, the California authorities have unanimously upheld the constitutionality of the claims statute and concluded that the statutory requirement for presenting claims to a public entity before suit may be brought does not violate the constitutional guarantees of due process or equal protection of laws [citations]." (*Id.,* at pp. 580-582, italics deleted.)

■ Plaintiffs claim "[n]one of these traditional considerations make sense in the context of the criminal defendant in custody and/or on trial by the very entity against whom he is making the claim. Indeed, it is clearly an absurd classification to make him file his claim and at the same time prohibit him from suing while the charges are pending. Further, it is a practical impossibility. Is the County Counsel going to conduct an investigation and make a recommendation on the civil side of the house contrary to what the District Attorney is doing? . . . Under what conceivable scenario, other than some kind of weird political battle between those two . . . public officials and/or the board of supervisors, could such a claim *ever* be granted?"

Defendant County points out plaintiffs' "position assumes the civil suit and the criminal suit involved identical factual and legal issues and identical public entities. Oftentimes criminal defendants will make claims for excessive force, loss of property, personal injury in relation to the arrest, false

arrest, intentional infliction of emotional distress, and other torts which may be remote from the criminal litigation. The prompt filing of a claim enables a public entity, and the public employee, to place evidence holds on police transcripts, radio calls and other police records which may be systematically destroyed otherwise. In cases where criminal defendants are injured by use of police equipment the prompt filing of a claim allows a public entity a chance to correct the conditions, policies, or modify the equipment which caused the injury. The district attorney is an officer of the state whose jurisdiction is countywide. The fact that a district attorney is pursuing a criminal complaint does not prohibit the local public entity from compromising a complaint arising from the arrest of the criminal defendant. The prompt knowledge of a claim, especially a claim for millions of dollars, allows the public entity to plan for the fiscal years to come with the advance knowledge of a liability which it may be expected to meet in the future. This is very important not only to the County of Los Angeles, but to the smaller cities and counties which this legislation affects."

As the foregoing illustrates, the Davis amendment bears a rational relationship to a legitimate state purpose. It serves the same goals as the rest of the claim filing statutes. The mere fact the criminal defendant cannot yet sue on the claim does not mean a local public entity will deny the claim, nor does it lessen the need for investigation of the claim, correction of the conditions or practices which gave rise to the claim or planning for the possible fiscal impact of a future suit.

Plaintiffs add: "Further, a rule of substantial compliance has been applied to government tort claims, and it could be argued that the mere fact that the criminal defendant is contesting the prosecution gives the government all the notice it needs that it is subject to a claim of wrongful prosecution if a verdict of innocent is returned." "How can the [government] claim to not be on notice of the facts about the case it is prosecuting?"

■ *Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27 [234 Cal.Rptr. 612] notes: "The primary function of the Tort Claims Act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate avoid litigation by settling meritorious claims. [Citation.] Compliance with the claims statute is mandatory and failure to file a claim is fatal to a cause of action. [Citation.] ■ *The fact that a public entity has full knowledge of the claim and related circumstances is not sufficient to excuse noncompliance.* [Citations.]" (At p. 32, italics added.) ■ The court adds that the Tort Claims Act "should not be applied to snare the unwary where its purposes have been satisfied. [Citation.] Consequently, courts employ the test of substantial compliance rather than strict compliance in deciding whether a plaintiff has

met the requirements of the Tort Claims Act. [Citation.] The test for the sufficiency of a particular claim is set forth in *City of San Jose* v. *Superior Court* [(1974) 12 Cal.3d 447,] 456-457: '[W]e conclude that to gauge the sufficiency of a particular claim, two tests shall be applied: Is there some compliance with all of the statutory requirements; and, if so, is this compliance sufficient to constitute substantial compliance?'" (189 Cal.App.3d at p. 33, italics deleted.)

The fact criminal defendants contest their prosecution does not necessarily give a public entity knowledge of their claims and the related circumstances. If the claims arise out of the circumstances of their arrest, for example, and the legality of the arrest is not challenged at trial, how would defense against the criminal charges put the public entities on notice of the claims? Indeed, as the trial court noted, "when you think of all the hundreds of thousands of criminal defendants in this county every year, then the county would have to prepare itself an investigation [of] each one of those arrests in preparation for a possible claim. [¶] They had—the County had no more reason to expect a claim from [plaintiffs] . . . [than] it does [from] any of the other hundreds of thousands of arrestees."

Moreover, substantial compliance requires " '*some compliance* with all of the statutory requirements' "; the public entity's knowledge does not excuse such compliance. (*Dilts* v. *Cantua Elementary School Dist., supra,* 189 Cal.App.3d at pp. 32, 33, italics altered.) Thus, defense against a criminal charge cannot constitute substantial compliance.

▮ Plaintiffs also assert: "It should be readily apparent that there is a direct conflict between the guarantee in the Fifth Amendment to the U.S. Constitution of the criminal defendant's right to silence, and the Davis Amendment's requirement that in order to preserve her claim against the government each of the three . . . former criminal defendants would have been compelled to make a truthful statement under oath . . . explaining the details of her claim against the very governmental entity that was prosecuting her."

The claim to be filed must contain the claimant's name and address; the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted"; "[a] general description of the indebtedness, obligation, injury, damage or loss incurred"; the names of those causing the damage, if known; and the amount of the claimed damages. (§ 910.) As stated in *Lyons* v. *Johnson* (9th Cir. 1969) 415 F.2d 540, 542, "It is a little difficult to visualize how a possibility of self-incrimination could be involved in any mere relevant interrogation of [plaintiffs] as to the background, aspects and incidents of [their] asserted claims . . . ."

Plaintiffs cite *Troy* v. *Superior Court* (1986) 186 Cal.App.3d 1006 [231 Cal.Rptr. 108] in support of their assertion. They state: "In *Troy* at 1013, the shield of the privilege was denied in a judgment debtor proceeding because 'there is no criminal prosecution pending against Troy, as far as anyone knows, there is not even an investigation which might lead to a criminal prosecution.' Here, the Davis Amendment only applies if there is a pending prosecution so the danger can never be speculative and is by definition always real and present."

Plaintiffs miss the point of *Troy*. In *Troy,* petitioner asserted his Fifth Amendment privilege against self-incrimination at judgment debtor proceedings, claiming revelation of his assets "could lead to an inquiry of how and when those assets were acquired making that information a 'link in the chain' of evidence" which could lead to a criminal case against him. (186 Cal.App.3d at p. 1012.) ■ The court noted the privilege may not be asserted merely by declaring an answer will be incriminating, but it must be " 'evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous, because injurious disclosure could result.' " (*Id.,* at pp. 1010-1011.) The fear of incrimination must be reasonable in the circumstances, in light of the context of the questions and the setting in which they are asked. (*Id.,* at p. 1011.) There must be a real danger of incrimination, not a remote or speculative possibility. (*Ibid.*) The court concluded, in view of the fact there was no criminal prosecution or investigation aimed at petitioner, his fear of self-incrimination was pure speculation and there was no real danger entitling him to invoke his Fifth Amendment privilege. (*Id.,* at p. 1013.)

■ The mere fact there is a pending criminal prosecution does not entitle the defendant to invoke the privilege; the information required to be disclosed must serve as a " 'link in the chain' of evidence" in the case against her. (*Id.,* at p. 1012.) ■ It is not, in the context of a claim filed against a governmental entity for the torts of its employees, " 'evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question' " would serve as such a " 'link in the chain' of evidence." (*Id.,* at pp. 1010-1011, 1012.) After all, the information sought to be revealed in the claim is the circumstances surrounding the alleged misconduct of the government employee, not that of the claimant. Therefore, we conclude the Davis amendment does not violate the Fifth Amendment and is not unconstitutional.

## II

■ Plaintiffs also contend Chad and Wendi's claims were tolled because of their age so as to make them timely when filed. Again, we disagree.

 ■■ *Hernandez* v. *County of Los Angeles* (1986) 42 Cal.3d 1020, 1031 [728 P.2d 1154] holds where a minor's late claim application is filed within one year of the accrual of his cause of action, he or she was a minor during the entire 100-day claim period and any delay in filing the late claim was clearly not attributable to the minor, the government entity to which the application is made is obliged to accept the late claim pursuant to section 911.6 and the court is required to grant relief from the claim filing statutes pursuant to section 946.6.

 ■■ The children's claims, included with their petitions, show they were minors during the entire 100-day claim period; Chad was born in 1976 and Wendi in 1970. In neither their claims, their applications for leave to present late claims to the City, nor their petitions for relief do the minors state or show that any delay in filing the claims or late claim applications was clearly not attributable to themselves. Hence, they have not met the criteria of *Hernandez* and are not entitled to the relief it prescribes. It should be noted the trial court denied their petitions for relief *without prejudice* to their making the required showing.

 However, Chad and Wendi, like the other plaintiffs, should be entitled to litigate those parts of their causes of action against defendants which accrued within 100 days of the filing of their claims. The trial court neglected to extend this 100-day provision to the minors.

 The order as to Chad and Wendi is modified to provide they may litigate those parts of their causes of action against defendants which accrued within 100 days of the filing of their claims with defendants. In all other respects, the orders appealed from are affirmed. Chad and Wendi to recover costs.

 Hanson, J., and Kolts, J.,* concurred.

 Appellants' petition for review by the Supreme Court was denied October 12, 1988. Mosk, J., was of the opinion that the petition should be granted.

---

* Assigned by the Chairperson of the Judicial Council.