Filed 8/31/15  1538 Cahuenga Partners v. Fabe CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| 1538 CAHUENGA PARTNERS, LLC,<br>    Plaintiff and Cross-defendant,<br><br>    v.<br><br>JACQUELINE M. FABE,<br>    Defendant, Cross-complainant and<br>    Respondent;<br><br>TANYA BOGORAD et al.,<br>    Appellants.<br>_____<br>CALIFORNIA STATE LABOR<br>COMMISSIONER,<br>    Plaintiff and Respondent,<br><br>    v.<br><br>1538 CAHUENGA PARTNERS, LLC,<br>    Defendant;<br><br>TANYA BOGORAD et al.,<br>    Appellants. | B253624<br><br>(Los Angeles County<br>Super. Ct. No. BC341913)<br><br><br><br><br><br><br><br><br>(Los Angeles County<br> Super. Ct. No. SC099658) |

APPEAL from orders of the Superior Court for the County of Los Angeles.

Michael Johnson, Judge.  Affirmed.

Law Offices of Dennis Price and Dennis Price for Appellant Tanya Bogorad.

Law Offices of Leo Fasen and Leo Fasen for Appellant Ron Hacker.

Law Offices of Barry G. Coleman and Barry G. Coleman for Appellant BAG Fund, LLC.

Law Offices of Taylor Prainito and Taylor Marie Prainito for Appellant BAG Fund, Inc.

Jacqueline M. Fabe, in pro. per., and Marshall A. Lerner for Defendant, Cross-complainant and Respondent Jacqueline M. Fabe.

David Lawrence Bell, Division of Labor Standards Enforcement, for Plaintiff and Respondent California State Labor Commissioner.

_____

## SUMMARY

In January 2012, we affirmed a judgment in favor of the California State Labor Commissioner and Jacqueline M. Fabe, and against Ms. Fabe's former employer, 1538 Cahuenga Partners, LLC (Cahuenga). The judgment included an award to the Commissioner of more than $232,000 in a retaliation action the Commissioner brought on behalf of Ms. Fabe.

Ms. Fabe and the Commissioner, as judgment creditors, have been trying to enforce the judgment ever since. Their efforts included applications for orders requiring third persons (appellants Ron Hacker, BAG Fund, LLC, BAG Fund, Inc., and Tanya Bogorad (collectively, "third parties")) to appear for examination about their knowledge of Cahuenga's assets and liabilities. The third parties resisted, and sought protective orders limiting the scope of the examinations and document production requests. They argued, among other things, that such an examination was beyond the scope of the statutory provision authorizing the examination of third persons. The trial court denied the protective orders.

We affirm the trial court's orders.

## FACTS

This litigation began more than 10 years ago, when Ms. Fabe, an attorney, filed a claim for unpaid wages with the Labor Commissioner. She obtained an award of almost $13,000 in wages, interest and waiting time penalties. In the interim, Cahuenga and its

2

principal, Ron Hacker, filed a malpractice suit against Ms. Fabe. Ms. Fabe filed a retaliation claim with the Commissioner. She prevailed on her retaliation claim, and the Commissioner sued Cahuenga, seeking damages (in the form of Ms. Fabe's defense costs) for the illegal retaliation. Ms. Fabe also cross-complained in the malpractice suit, seeking indemnity for her legal expenses.

Ms. Fabe and the Commissioner prevailed on all their claims, and we affirmed the judgment in an unpublished opinion. (*1538 Cahuenga Partners, LLC v. Fabe* (Jan. 5, 2012, B222023.) Later that year, an amended judgment was entered in favor of the Commissioner for more than $297,000, plus interest, and in favor of Ms. Fabe for more than $101,000 (to be offset against any recovery by the Commissioner).

Efforts by the Commissioner and Ms. Fabe (collectively, judgment creditors) to collect the judgment have so far been unsuccessful. (In March 2010, Ms. Fabe also filed a motion to add Mr. Hacker to the judgment as a judgment debtor; this was denied without prejudice, and was not renewed.)

Mr. Hacker, who had been the manager of Cahuenga during the events giving rise to the litigation, resigned in 2010. Benjamin Schneider, then the manager of Cahuenga, eventually appeared for a judgment debtor examination in April 2012. He testified that he had searched for documents requested by judgment creditors in his apartment (which he said was the physical office for Cahuenga). The only document he found had a bank account number, and he was able to request statements from Chase Bank. The bank account had been closed. Mr. Schneider asked Mr. Hacker about bank accounts that Cahuenga had before he (Mr. Schneider) became manager. Mr. Hacker told Mr. Schneider he would look into it and would try to produce whatever records he could, but Mr. Schneider received nothing from Mr. Hacker.

Mr. Schneider did not know what happened to a $71,800 initial capital contribution Ron Hacker made to Cahuenga, or a $48,200 contribution from another party. (Mr. Hacker told him the $70,000 was "sweat equity," not actual capital.) Mr. Schneider stated Cahuenga had no money. Mr. Schneider asked Mr. Hacker a few times for the documents. He also asked Tanya Bogorad for documents, because she "was

3

involved with [Cahuenga] at some point in time, and I thought she might have some pertinent information," but Ms. Bogorad did not respond to his telephone messages. Mr. Schneider testified that no one has received any moneys or assets in any form from Cahuenga since he became the manager.

Beginning in August 2012, the Commissioner sought and obtained "Order[s] to Appear for Examination," directed to the third parties:  Mr. Hacker "aka Ronen Hacker"; B.A.G. Fund, Inc. (Ron Hacker, President); BAG Fund, LLC (Ron Hacker, Manager); and Tanya Bogorad.  Each order to appear for examination ordered the individual or entity "to appear personally before this court . . .  [¶]  . . .  [¶]  to answer concerning your knowledge of the judgment debtor's assets and liabilities," and each attached "[a] declaration under [Code of Civil Procedure section] 708.130."[1]  (Section 708.130, subdivision (a) provides that "[w]itnesses may be required to appear and testify . . . in an examination proceeding under this article in the same manner as upon the trial of an issue.")

The attached declarations were from counsel for the Commissioner, and stated the bases for his belief that each third party had knowledge of Cahuenga's assets and liabilities, as follows:

As to Mr. Hacker, counsel's declaration stated:  "He was the Manager of [Cahuenga] from February, 2005, when Jacqueline M. Fabe . . . first worked for [Cahuenga] through the trial in November, 2009, through judgment and an order correcting judgment.  He allegedly resigned in April, 2010, although no document was stamped as filed with the Secretary of State until August 30, 2010.  He also originally sued Fabe as an individual."

As to BAG Fund, Inc., and BAG Fund, LLC (the BAG entities), counsel declared:  "Ron Hacker . . . is the President of B.A.G. Fund, Inc. [or Manager of BAG Fund, LLC].  He was formerly the Manager of [Cahuenga].  Discovery from [Cahuenga] demonstrates that Hacker had approximately $70,000 invested in [Cahuenga] before he resigned as

---

**1**     All further statutory references are to the Code of Civil Procedure.

4

manager in 2010. The new manager of [Cahuenga] Benjamin Schneider has testified that there is virtually no money in any current account of [Cahuenga]. Hacker may have fraudulently transferred assets of [Cahuenga] to other companies that he controls, including Bag Fund. Hacker may be in possession of all of the missing documents and bank accounts of [Cahuenga], and may have them in his possession, along with the books and records of Bag Fund, which may show what happened to the $70,000 formerly held in the name of [Cahuenga] by Ron Hacker. The address for Bag Fund is [or has been] the same as is listed as the address for John Levine, the current attorney for [Cahuenga], 12121 Wilshire Blvd, #1240, Los Angeles, CA 90025. It is also a current address for Ron Hacker aka Ronen Hacker listed in Lexis."

As to Tanya Bogorad, counsel stated: "She was an employee and paralegal of [Cahuenga] for 12 years, including when [Fabe] first worked for [Cahuenga] in 2005 through the trial in November, 2009, according to her testimony at the trial when she appeared as a representative of [Cahuenga] . . . . It is my belief that she still works at [Cahuenga] or for another related company at 12121 Wilshire Blvd., . . . the current address for most of Ron Hacker's companies. She testified that [Cahuenga] is a litigation business and a real estate business . . . . She mostly works for [Cahuenga]. . . . She is paid a salary . . . . Therefore she would have copies of current and past checks showing accounts from which her salary was paid. Ron Hacker was her boss . . . . Therefore, based on her position and length of service she would know where all the files and records for [Cahuenga] would be in the office or with Ron Hacker. She was involved in the case against Fabe from the beginning and has spoken to every attorney who has been involved . . . . Therefore she should know how the attorneys on the case were paid and out of what bank accounts and where the files are in the office with respect to each of these attorneys."

After the first orders to appear for examination were issued, a flurry of motions to quash service and vacate the orders ensued. Mr. Hacker failed to appear; bench warrants were issued and held, released and eventually quashed; and the case was transferred to another department. Orders to appear for examination were issued again, along with

notices in lieu of subpoenas requesting Mr. Hacker and Ms. Bogorad to bring numerous categories of documents with them to their examinations.

On February 25, 2013, Mr. Hacker filed a motion for a protective order, seeking to prohibit judgment creditors "from proceeding against Hacker and/or his agents as *de facto* judgment debtors . . . ." The BAG entities followed suit, as did Ms. Bogorad. Mr. Hacker argued the discovery – which sought, among other things, all documents relating to his current assets and earnings from 2005 to the present; real property deeds; deposit account statements; current bank accounts and statements; and so on – impermissibly sought privileged matters, was irrelevant, unreasonably cumulative, unduly burdensome, and violated his right to privacy and trade secrets, treating him as an alter ego and co-debtor rather than a third party. Mr. Hacker argued that section 708.120 contains the only express authority for the examination of a third person, and "that authority is limited to third persons who control the Judgment Debtor's property," which he does not; he argued he has no interest in or debt owed to Cahuenga, and holds no intangible, personal or real property of Cahuenga.

Mr. Hacker sought a protective order that would require judgment creditors to cease any production or other discovery requests until they make and prevail on an alter ego motion to add him as an additional judgment debtor; to cease seeking to invade his personal privacy with respect to his business and personal affairs, including matters relating to the BAG entities; to cease from acting to misappropriate trade secrets of the BAG entities; and "[t]o limit the scope of Hacker's Examination to whether Hacker possesses or controls property in which [Cahuenga] has an interest" or is indebted to Cahuenga. The BAG entities made similar arguments, as did Ms. Bogorad, and all sought monetary sanctions.

In September 2013, the trial court "largely denied but granted in part" the motions for protective orders. After hearing arguments, the court stated:

"This case just has a history of hardball resistance to reasonable requests to enforce the judgment. It's been through many courtrooms. I got involved when the Labor Commissioner was seeking a contempt order against Benjamin Schneider, the

6

current manager of Cahuenga Partners; and I'm just astounded at what I read; and I read everything as I could, as I've done here; and what I see is parties . . . saying we are not going to comply. We don't care what you say. Forget it."

The court observed it had held Mr. Schneider in contempt of court; the records showed "the names that kept coming up were Ron Hacker and Ms. Bogorad as having some papers and knowledge"; and the motions showed "an internet work [*sic*] of organizations in which Mr. Hacker is involved and controls." Consequently, the court concluded it was "appropriate to conduct discovery and for those parties to come in and answer as to what their relations are"; the court saw no alternative, "both for the integrity of the process and the courts," and "under all the circumstances here . . . this is entirely warranted . . . ." The court indicated its order would set out the general principles relating to the specific discovery requests, and ordered the parties to meet and confer to eliminate unnecessary items.

The court's written order stated: "[T]he following topics are directly relevant to the judgment, and there is good cause for discovery and examination: 1) all documents, assets, property, and records of Cahuenga in any Moving Party's possession or under their control; 2) any record of any business or financial transaction between any Moving Party and Cahuenga; and 3) any record of any business or financial transaction between any Moving Party and any other Moving Party."

The court rejected the contention that the orders to appear were attempting to assert alter ego liability, concluding that "the discovery is appropriately directed at locating property which may be used to satisfy the judgment." The court declined to award any sanctions.

In October 2013, the third parties filed motions for reconsideration. These were based on "new and different law" in the form of the opinion in *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210 (*Fox Johns*), filed shortly after the trial court entered its minute order. In *Fox Johns*, as a matter of first impression, the court held that discovery sought by the judgment creditor in that case was "beyond the scope of what section 708.120 permits." (*Id.* at p. 1214.)

7

The trial court granted the motion for reconsideration, but declined to change its order, finding that *Fox Johns* did not require a different result. At the hearing, the court stated:

"The fact is that the judgment creditors have made a factual showing of an interrelationship among all of the parties here. Both in terms of personnel and in terms of business transactions and assets, there is a strong potential for there to be property in the possession of the moving parties or business records in the possession of the moving parties that would shed light on the activities and obligations of the judgment creditors [*sic*]. And the showing is that the moving parties are connected with Cahuenga and each other, that Mr. Hacker had a fundamental role in Cahuenga with evidence that he was instrumental in the business activities of Cahuenga. And, so, with the connection of Cahuenga and the moving parties, there is a sufficient showing that Cahuenga assets and business records may be in the possession of the moving parties."

The third parties filed timely appeals of the trial court's orders, and this court denied motions to dismiss the appeals.

## DISCUSSION

Before turning to the arguments of third parties, it may be helpful to describe pertinent statutory provisions on examination proceedings.

First, section 708.110 provides for the examination of a judgment debtor. It allows the judgment creditor to apply for a court order requiring the judgment debtor to appear "to furnish information to aid in enforcement of the money judgment." (§ 708.110, subd. (a).)

Second, section 708.120 provides for the examination of third persons. It allows the judgment creditor, upon a showing "that a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor in an amount exceeding . . . $250[]," to obtain a court order "directing the third person to appear before the court . . . to answer concerning such property or debt." (§ 708.120, subd. (a).) One court has held that the examination of a third party under section 708.120 "is limited to exploring the third party's possession of the judgment

8

debtor's property or any debt owed the judgment debtor . . . ." (*Fox Johns, supra,* 219 Cal.App.4th at p. 1222.)

Third, section 708.130 provides that "[w]itnesses may be required to appear and testify before the court or referee in an examination proceeding under this article in the same manner as upon the trial of an issue." (*Id.*, subd. (a).) There are no California cases interpreting this provision, but a well-known treatise states, citing section 708.130: "In addition [to sections 708.110 and 708.120], it appears that any person with knowledge leading to enforcement of the judgment (e.g., debtor's bookkeeper, accountant or nondebtor spouse) can be subpoenaed to testify before the court or a referee in an examination proceeding in the same manner as a trial witness." (Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2015) ¶ 6:1282, p. 6G-3 (TRG Guide); see also *21st Century Financial Services, LLC v. Manchester Financial Bank* (S.D.Cal. Dec. 30, 2014, No. 14mc0500) 2014 U.S.Dist. Lexis 179228, p. 9 (*21st Century Financial*) ["A plain language reading of [section 708.130] indicates to this Court that any witness with relevant information may be compelled to submit to an examination in connection with a judgment enforcement, so long as that witness could be called upon to testify as a witness in a trial on the issue"].)

The TRG Guide further informs the practicing lawyer that some court clerks advise counsel to use the standard Judicial Council application and examination order form, "even when the person is neither in possession or control of the judgment debtor's property nor owes the judgment debtor over $250. In that event, the items specifying the purpose of the appearance . . . and identifying the person to be examined . . . need to be revised and an appropriate declaration attached." (TRG Guide, *supra*, ¶ 6:1282.1, p. 6G-3.) (That is exactly what the Labor Commissioner did in this case.) The TRG Guide further observes, however, that "[n]onetheless, a literal reading of [section 708.130] seems to mandate service of a *subpoena* on a third party required to testify at an examination of the judgment debtor or other third party held pursuant to [sections] 708.110 or 708.120." (*Ibid.*)

Fourth, section 708.200 authorizes the court to "make such protective orders as justice may require."

The third parties make two arguments to support their claim the trial court abused its discretion in denying the protective orders. First, they seize upon the comments in the TRG Guide to argue that it was improper to use an altered Judicial Council form for the order to appear for examination, and that instead a subpoena was required. Because they were not served with a subpoena, the appropriate procedure was not followed and the court's order to appear was "defective." We reject this claim.

As Ms. Bogorad tells us, and as is apparent from its recognition in the TRG Guide, the practice of altering the Judicial Council form "for service on a person that has knowledge but does not have possession of any property of the judgment debtor . . . is widespread throughout California." Third parties ask us to find this practice is improper. We will not do so. Third parties do not persuade us that the statute prohibits this practice, or that it is "defective," and they do not demonstrate any prejudice from its use in this case.

We decline to construe section 708.130, or section 708.120, without regard to each other or to the overall statutory scheme, as third parties would have us do. We see nothing in the statutory scheme that forbids the practice followed in this case. The purpose of the provisions on examination proceedings is to facilitate the judgment creditor's search for assets. (See *Troy v. Superior Court* (1986) 186 Cal.App.3d 1006, 1014 ["the purpose of a judgment debtor examination is to leave no stone unturned in the search for assets which might be used to satisfy the judgment"]; *Fox Johns*, *supra*, 219 Cal.App.4th at p. 1221 ["the purpose of section 708.120 is to provide a tool that allows a judgment creditor to find property or money that is owed to the judgment debtor"].)

At the core of third parties' contention here is the claim that, unlike the case of the judgment debtor, "[t]here is no procedure to bring a third party in for examination . . . simply to get 'information' about another party's assets." We cannot agree. Any such construction is irrational and contrary to the statutory purpose. So long as procedures

10

comply with due process, we are in no doubt that, under the circumstances here, third parties may be examined about their knowledge of the judgment debtor's assets. Notably, third parties do not tell us how or why the court orders to appear for examination that were issued in this case, rather than the subpoenas they contend were required, have prejudiced them in any way. Plainly they are unable to do so.

We turn then to *Fox Johns* and third parties' second argument, which is another version of the first. In substance, they contend that under *Fox Johns*, section 708.120 strictly limits the scope of their examinations, as in their proposed protective order, to whether they possess or control – not whether they have knowledge of – property in which judgment debtor Cahuenga has an interest.

As we indicated above, *Fox Johns* states that a third party examination under section 708.120 "is limited to exploring the third party's possession of the judgment debtor's property or any debt owed the judgment debtor . . . ." (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1222.) But *Fox Johns* did not involve, so far as the opinion shows, an order to appear for examination that expressly invoked section 708.130, including a declaration under that section explaining the bases for believing the third parties possessed pertinent information and records. (See *21st Century Financial*, *supra*, 2014 U.S.Dist. Lexis 179228, p. 10 [finding *Fox Johns* inapposite "because it concerned an examination that was obtained under § 708.120"].)

Indeed, the facts in *Fox Johns* are strikingly different from the facts before the trial court in this case. In *Fox Johns*, the judgment creditor served the judgment debtor's lawyers – who represented the debtor in the underlying trial and in the appeal – with a subpoena for the production of documents, and sought (and obtained) a third party examination of the lead lawyer (Wexler) under section 708.120. (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1213.) Before doing so, the judgment creditor had examined the judgment debtor's chief financial officer under section 708.110, and the judgment creditor received "a voluminous document production of financial and other records . . . ." Then, at Wexler's third party examination, he refused to answer a number of questions, leading to various motions, orders, unsuccessful attempts to agree on the

11

scope of the examination, motions to quash, motions to compel, and so on. All this culminated in orders requiring Wexler to appear and produce "certain documents." (*Id.* at pp. 1214-1215)~

On appeal, Wexler contended that "any examination under section 708.120 is limited in scope by the statute's language" – meaning limited to questions relating to the law firm's possession or control of property in which the judgment debtor had an interest (or its indebtedness to the judgment debtor). (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1219.) The judgment creditor's "stated purposes in examining Wexler," on the other hand, were "to discover the identity of [the] law firm's clients, review the law firm's billing of other clients, or otherwise obtain information about entities that may be the alter ego of the judgment debtor." (*Id.* at pp. 1221, 1219.) The Court of Appeal agreed with Wexler, saying that section 708.120 "does not allow for a more expansive examination" and the third party could only be questioned "regarding the property of the judgment debtor it possesses or the debt it owes the judgment debtor." (*Fox Johns*, at p. 1221.)

We do not question the result in *Fox Johns*. But the circumstances here are quite different. The orders to appear for examination in this case expressly invoked section 708.130, which authorizes requiring witnesses to testify in an examination proceeding "in the same manner as upon the trial of an issue." Unlike *Fox Johns*, where the judgment debtor produced "voluminous" financial records, here there was "a history of hardball resistance to reasonable requests to enforce the judgment," including a contempt of court finding as to the judgment debtor's current manager, and evidence that both Mr. Hacker and Ms. Bogorad may have information about Cahuenga's assets. And unlike *Fox Johns*, the trial court here did not authorize discovery that was far afield from the judgment debtor's assets.

Here, the court found good cause for discovery and examination "of the matters directly related to the judgment," consisting of "documents, assets, property and records of Cahuenga" in any third party's possession or control; and records of business or financial transactions between third parties and Cahuenga and between any of the third

12

parties.  As the trial court observed, "[n]othing like that [(the discovery sought in *Fox Johns*)] is involved here."  (See also *21st Century Financial, supra,* 2014 U.S.Dist. Lexis 179228, pp. 7-8 [fundamental fairness favored allowing judgment creditor to examine a third person to obtain information about property and assets of the judgment debtor; the third person was "intimately involved at all stages of the operations" of the judgment debtor, and testimony indicated the third person "may possess documents pertaining to Judgment Debtor that are not otherwise available to Judgment Creditor"].)

In sum, we conclude that a third party witness, who has knowledge, but not possession, of the judgment debtor's assets, may be required to appear and be examined about what he or she knows.  We see no basis for concluding the Legislature intended otherwise.  As *Fox Johns* tells us, section 708.120 is "a tool that allows a judgment creditor to find property or money that is owed to the judgment debtor."  (*Fox Johns*, *supra*, 219 Cal.App.4th at p. 1221.)  That is the purpose of *all* the provisions on examination proceedings, including section 708.130, and they are properly construed together and consonant with that purpose.

Accordingly, in the circumstances of this case we find no abuse of discretion in the trial court's refusal to issue the protective orders third parties sought.

## DISPOSITION

The orders are affirmed.  Ms. Fabe and the Labor Commissioner shall recover their costs on appeal.

GRIMES, J.

WE CONCUR:


RUBIN, Acting P. J.



FLIER, J.


13