The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Dennis Eugene ANGEL,
Defendant–Appellant.

No. 84CA1230.

Colorado Court of Appeals,
Div. C.

July 27, 1989.

Rehearing Denied Sept. 21, 1989.

Certiorari Denied April 2, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Petrusak, Asst. Atty. Gen., Denver, and Donna Skinner Reed, Sr. Deputy Dist. Atty., Golden, for plaintiff-appellee.

King, Paulsen & Wanebo, P.C., Lawrence F. King, Westminster, for defendant-appellant.

Opinion by Judge STERNBERG.

The determinative issue on this appeal is whether the trial court's action in excluding most of the public from the courtroom during the cross-examination of the prosecution's key witness deprived the defendant of his right to public trial. We conclude that it did not. There being no other error, we affirm the judgment of conviction.

During a party, a confrontation developed between two groups of guests. Some members of one group left, but later they and others, including the defendant, returned and several violent acts took place. One such act was the stabbing of a man, allegedly by the defendant. Also, a woman who observed the stabbing allegedly was struck by the defendant.

As the result of these acts, the defendant was eventually charged with two counts of attempted murder, two counts of first degree assault, and one count of first degree burglary, plus five counts of crime of violence, and ultimately, habitual criminal counts were added. After trial, the jury returned verdicts of guilty on one count of attempted murder, one count of second degree assault, one count of first degree burglary, and three counts of crime of violence, and thereafter, the jury found defendant guilty of three habitual criminal counts. Following sentencing by the court, this appeal was initiated.

I.

The woman who allegedly saw the stabbing did not appear in court when scheduled. Out of the presence of the jury, the prosecutor explained that the witness had told him that, as had been the case all week long, there had been some incidents at her store which she described as three people hanging around making rude comments, one of which was, "We'll get her when she comes out." The prosecutor went on to say that the witness had obtained the license plate number of the car in which these people were driving and had reported it to the Denver Police. He also stated that the name of the person to whom the car was registered was known and that attempts were being made to apprehend him. When the prosecutor told the witness by telephone to come to court, she told him that she was still at her store waiting for the police who had advised her not to move until they got to her store because she had received yet another threat.

This witness eventually arrived. While testifying on direct examination, she observed a certain person enter the courtroom, became agitated, and attempted to direct the attention of a police officer to that spectator. The court recessed to chambers when its attention was directed to this situation by co-defendant's attorney. It being late on Friday, the recess was extended to encompass the weekend.

The trial resumed the following Monday morning, and the direct examination of the witness was concluded without incident. During cross-examination, however, the witness again lost her composure at which time the trial court called a recess and conducted proceedings out of the presence of the jury.

The District Attorney stated that the witness, as well as members of her family, had been threatened and that the presence of certain persons in the courtroom caused her to lose her composure. Accordingly, he asked that the courtroom be cleared of non-essential persons for security reasons and to allow for the proper conclusion of the testimony. The trial court then held, over defendants' objections:

"This witness has been under emotional strain, both as a result of the underlying offense, and as result of threats which were made to her last Friday; that she has shown in the courtroom obvious effects of that emotional strain and that she has broken down at least once during the course of her testimony. The Court would therefore find that it would be more conducive to the completion of her testimony if only during her testimony, not during the entire trial, only during the completion of her testimony, that the courtroom were cleared of all nonessential personnel. The court is going to order at this time, that those spectators in the back of the courtroom, unless you have a purpose for being here, such as advisory witness for the defense, that you leave the courtroom, and the bailiff will advise you when you are able to return."

Following discussion, the trial court exempted wives and children of the defendants and one other person from the Public Defender's office from this order.

The defendant's attorney moved for a mistrial based, in part, on the assertion that clearing the courtroom would have a prejudicial impact on the jury. The court denied the motion stating:

"There have been varying amounts of people in this courtroom, as few as only the bailiff and the two representatives from the Sheriff's Department, and as many as maybe 30 people in the courtroom. There have never been the same amount. There are still five spectators in the courtroom. It is not an unusual amount, either large or small, with regard to who's been in this case. I don't think the jury's attention will be called to that fact."

Relying on *Thompson v. People*, 156 Colo. 416, 399 P.2d 776 (1965), the defendant contends that his Sixth Amendment right to a public trial was violated by the court's action in this case. However, *Thompson* is factually distinguishable. In that case, in the interest of keeping lurid sexual details in a rape case from being heard by college-aged people, the trial court excluded all of the general public from the courtroom for the entire trial stating that: "[I]t would serve no good purpose to permit the public generally to be in the courtroom during the course of trial." The exclusion was held to violate the defendant's right to a public trial and the conviction was reversed.

The situation here is significantly different. The exclusion was not for the entire trial, was more limited in both scope and duration, and was based on a totally different, very legitimate concern of the trial court.

■ The constitutional right to a public trial is not without limitations. *See Anderson v. People*, 176 Colo. 224, 490 P.2d 47 (1971). Notwithstanding the existence of the constitutional guarantee, a trial court does have broad discretion to regulate its courtroom and has inherent powers to preserve order and to prevent interference with or obstruction of justice. *See State v. Harding*, 635 P.2d 33 (Utah 1981).

■ A court has discretion to exclude temporarily some members of the public from the trial to allow a witness who feels intimidated to testify with composure. *See Butler v. Smith*, 416 F.Supp. 1151 (S.D.N.Y.1976). It is proper to weigh an accused's right to a public trial against the interests of protecting a witness from intimidation and maintaining the orderliness and fair-

ness of the proceedings. *U.S. ex rel. Bruno v. Herold*, 408 F.2d 125 (2d Cir.1969).

In *People v. Hinton*, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), a case with facts strikingly similar to those at issue here, the court held that the exclusion of the public from the trial during the entire testimony of one of the prosecution's key witnesses did not violate the defendant's right to a public trial. Quoting from an earlier case, *People v. Jelke*, 308 N.Y. 56, 123 N.E.2d 769 (1954), the court reasoned as follows:

"The public trial concept has, however, never been viewed as imposing a rigid, inflexible straitjacket on the courts. It has uniformly been held to be subject to the inherent power of the court to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice."

*See also State v. Harding, supra.*

Here, the trial court properly weighed the defendant's right to a public trial against the need to protect the witness from intimidation and to maintain order and security in the courtroom. Indeed, the witness' loss of composure and resultant behavior while testifying could have been highly prejudicial to the defendant. Moreover, this was a lengthy trial involving some two dozen witnesses; thus, the limited duration and scope of the order is not to be compared with the kind of indiscriminate exclusion found in *Thompson v. People, supra*, which denies a defendant the right to a public trial.

Recognizing the tension between the right to a public trial and the need of a trial court to preserve order in its courtroom and to protect witnesses, we conclude that the trial court in this case did not abuse its discretion. There was no general indiscriminate exclusion of the public; instead, the period of exclusion was of minimal duration and for a valid purpose.

## II.

We also find no error with respect to the defendant's other contentions of error.

There was no abuse of discretion in refusing to sever this trial from that of a co-defendant. *People v. Horne*, 619 P.2d 53 (Colo.1980).

We disagree with the assertion that error was committed during the habitual criminal phase of the proceedings. A *prima facie* case had been established that was sufficient to allow the jury to conclude beyond a reasonable doubt that the defendant was the person previously convicted of the three felonies in question. *See People v. Gonzales*, 666 P.2d 123 (Colo.1983); *People v. Mascarenas*, 666 P.2d 101 (Colo.1983).

During the pendency of this appeal, the cause was remanded for a hearing by the trial court of a motion for new trial based on newly discovered evidence. The court denied that motion, and the case was recertified to this court.

As the basis for that denial, the trial court found that, while the evidence was newly discovered, it was merely cumulative and would be unlikely to produce an acquittal if the case were retried. We perceive no abuse of discretion in that ruling. *See People v. Gutierrez*, 622 P.2d 547 (Colo. 1981); *People v. Board*, 656 P.2d 712 (Colo. App.1982).

The judgment is affirmed.

NEY, J., concurs.

REED, J., dissents.

Judge REED dissenting.

I respectfully dissent from the majority's affirmance of the judgment of conviction. I would hold that the trial court committed reversible error by its indiscriminate exclusion from the courtroom of all "non-essential personnel" during a portion of the trial.

By both the Sixth Amendment and Colo. Const. art. II, § 16, the accused has a right in criminal prosecutions to a public trial. That right was impermissibly abrogated here.

In my view, the case of *Thompson v. People*, 156 Colo. 416, 399 P.2d 776 (1965) is dispositive here. In *Thompson*, a judgment of conviction was reversed because the trial court indiscriminately excluded,

from the entire trial, those members of the public which, as here, it considered to be "non-essential" to the trial. Specifically, *Thompson* quoted with approval the rule announced in *United States v. Kobli*, 172 F.2d 919 (3d Cir.1949) as follows:

"'[T]he Sixth Amendment precludes the general indiscriminate exclusion of the public from the trial of a criminal case in a federal court over the objection of the defendant *and limits the trial judge to the exclusion of those persons or classes of persons only whose particular exclusion is justified ...'*" (emphasis supplied)

Here, the trial court's order was based merely upon the finding that the principal witness, who was then testifying, was under an emotional strain as a result of two factors, *i.e.*, the underlying offense and as the object of prior threats by one spectator who may have been present in the courtroom during her testimony. The trial court reasoned that: "[I]t would be more conducive to the completion of her testimony ... that the courtroom were cleared of all non-essential personnel." No evidence of a security problem was apparent, nor did the trial court consider removing only the one spectator as to whom grounds for exclusion may have existed. Rather, the court, without any detailed finding, as to the need therefore, issued its order of indiscriminate exclusion. While the order was limited to the balance of the witnesses' testimony, it was unlimited in application to all but the defendants, their wives and daughter, counsel and any advisory witnesses.

I disagree that the cases cited in the majority opinion are applicable here. In each there were substantial circumstances of threatened violence to the spectators, as by a threatened escape attempt, or the presence of a large number of spectators who were threatening or intimidating the witness in an atmosphere of hostility, or circumstances where a public identification of the witness would imperil the witness' life. Thus, clearing of the courtroom of all spectators could be justified on grounds of reasonable necessity. I find that none of those circumstances were established here.

Thus, in my view, the defendant, over his objections, was denied the constitutional right to a public trial by the court's order of general, indiscriminate exclusion of the public. Moreover, contrary to the people's assertion, the defendant need not show that he was, in fact, prejudiced by the action of the trial court. *United States v. Kobli, supra.*

Like the majority, I find no merit to defendant's other contentions of error, but because of the trial court's infringement of defendant's right to a public trial, I would reverse and remand for new trial.