**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joshua J. WHITMAN, Defendant–Appellant.**

No. 04CA1428.

Colorado Court of Appeals, Div. IV.

Nov. 29, 2007.

As Modified on Denial of Rehearing Dec. 27, 2007.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Priscilla J. Gartner, Deputy State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Joshua J. Whitman, appeals the judgment of conviction entered upon a jury verdict finding him guilty of two counts of sexual assault on a child. He also appeals the sentence imposed. We affirm.

## I. Background

RW and JW (the girls) are sisters who were six and seven years old, respectively, in 2003. Defendant is the girls' uncle. In early 2003, defendant would frequently sleep at his brother's home, where the girls lived.

The girls told their grandmother that defendant sexually assaulted them several times in their home while their parents were sleeping. Defendant was charged with two counts of sexual assault on a child, allegedly occurring between January 1, 2003, and February 26, 2003, and a jury subsequently convicted him of both counts. The trial court sentenced him to two concurrent terms of ten years to life in prison.

## II. Voir Dire

Defendant claims the trial court improperly denied his challenge for cause of a prospective juror, whom defendant subsequently removed from the jury with a peremptory challenge. We disagree.

■ We review the trial court's ruling on a challenge for cause for an abuse of discretion. *Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999). Because the trial court's ruling affects a defendant's substantial rights, it cannot be deemed harmless error if the court erroneously denies a challenge for cause to a prospective juror, the defendant uses a peremptory challenge to remove that juror, and the defendant exhausts all peremptory challenges. *Id.* at 486–87.

■ The juror here previously worked for a victim advocacy organization on a college campus for seventeen years, but changed careers five years before defendant's trial was held. The juror continued to volunteer as a board member for the organization, and participated in raising funds for it. She encountered the trial prosecutor once years before, when she brought a victim to court to testify in an unrelated case.

The juror assured the trial court she would be fair and impartial, citing her training. She understood and believed in the presumption of innocence, she agreed the charges against defendant were not evidence, and she stated she would acquit defendant if the prosecution's evidence was insufficient to establish his guilt beyond a reasonable doubt.

The trial court denied defendant's challenge for cause because the juror served primarily as an administrator of the program when she worked for the victim advocacy organization; never testified in a case; did not participate in the prosecution of alleged offenders beyond taking victims to the district attorney's office or to court; had not been involved in the day-to-day operations of the organization for five years; and focused on the organization's financial affairs in her present capacity as a board member.

The record indicates the prospective juror was not a "compensated employee of a public law enforcement agency" for purposes of section 16–10–103(1)(k), C.R.S.2007, and Crim. P. 24(b)(X)(II). There is no information to establish the victim advocacy organization was a "police-like division of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals." *Ma v. People*, 121 P.3d 205, 211 (Colo.2005) (defining the term "law enforcement agency" in § 16–10–103(1)(k)); *see also People v. Speer*, 2007 WL 3025312, — P.3d —, — (Colo.App. No. 05CA0206, Oct. 18, 2007) (TSA employees were not compensated employees of a law enforcement agency); *People v. Gilbert*, 12 P.3d 331, 335–36 (Colo.App.2000)(volunteer victim advocate not employee of law enforcement agency).

Defendant relies on *People v. Rogers*, 690 P.2d 886, 887–88 (Colo.App.1984), and *People v. Reddick*, 44 Colo.App. 278, 280, 610 P.2d 1359, 1361 (1980), and contends there are several factors about the juror's association with the victim advocacy organization that, in combination, required removing her from the jury for cause. We are not persuaded.

*Rogers* and *Reddick* are both distinguishable. In *Rogers*, a division of this court concluded a challenge for cause should have been granted in a first degree murder case when a juror was a fire fighter who had a close daily association with police and prosecutors; was familiar with the crime scene in the case; and worked with a person who had attended the murder victim.

In *Reddick*, the division determined a challenge for cause should have been granted when a juror took a real estate law class from the prosecutor, and thought him to be intelligent; was married to a police officer; was acquainted with a police officer who would testify for the prosecution; thought the name of a police officer who would testify for the defense sounded familiar; and made ambivalent statements about being fair and impartial.

Here, the juror had no familiarity with the facts of the case; was not closely acquainted with the prosecutor; did not have regular working relationships with law enforcement officers; and was not familiar with any of the law enforcement officers who would testify in defendant's case. Her association with the victim advocacy organization alone was not

enough to require removing her from the jury for cause. *See People v. Woellhaf*, 87 P.3d 142, 151 (Colo.App.2003) (juror worked with sexual assault victims), *rev'd on other grounds*, 105 P.3d 209 (Colo.2005); *People v. Gilbert*, 12 P.3d at 336 (juror was volunteer victims' advocate); *People v. Serpa*, 992 P.2d 682, 684 (Colo.App.1999)(juror was associated with county victim assistance group).

When these facts are combined with the prospective juror's clear statements that she would be fair and impartial and follow the law, the record does not support defendant's claim that the prospective juror would likely be biased against him. Thus, we conclude the trial court did not abuse its discretion in denying defendant's challenge for cause.

### III. The Girls' Testimony

Defendant contends the court abused its discretion by adopting certain procedures during the girls' testimony. We disagree.

The trial court has discretion to exercise reasonable control over interrogation of witnesses and presentation of evidence. CRE 611. Absent an abuse of discretion, the court's rulings will not be disturbed on review. *People v. Caldwell*, 43 P.3d 663, 670 (Colo.App.2001).

When RW was first called to the stand, she seemed withdrawn and unwilling to testify. The prosecutor called a recess, and, outside the jury's presence, told the trial court RW was afraid. The prosecutor asked the court to allow RW's teenage sister to bring RW into court and to sit near her while RW testified.

The trial court granted the prosecutor's request, overruling defendant's objection. The trial court observed that the teenage sister would not testify as a witness, allowed the sister to sit in a chair next to the witness stand, ordered that the sister would not be allowed to communicate with RW during her testimony, indicated the jury would not be informed of the sister's identity, and instructed the jury it was not to draw any inferences from the sister's presence.

The sister carried RW into the courtroom in the jury's presence. RW was crying. Once the questioning began, RW became more composed, and answered all the questions put to her by both the prosecutor and defense counsel. RW did not communicate with her sister during her testimony.

### A. Emotional Witness

The fact that RW cried before the jury when her teenage sister carried her into the courtroom is not cause for reversal. When child witnesses are involved, some displays of emotion in court are inevitable, particularly when the subject matter is as traumatic as sexual assault. Where the defendant points to no specific prejudice resulting from the witness's display, and our review of the record discloses none, we will not disturb the conviction. *See People v. Ned*, 923 P.2d 271, 276–77 (Colo.App.1996).

There is no indication in the record that the brief display of emotion exhibited by RW would mandate reversal of defendant's conviction. *See People v. Thatcher*, 638 P.2d 760, 769 (Colo.1981) (emotional displays by victim's husband during closing argument did not require mistrial); *People v. Montgomery*, 743 P.2d 439, 441–42 (Colo.App.1987) (victim's crying during defense counsel's closing argument did not require mistrial).

### B. Sister's Presence

A division of this court has indicated a victim witness advocate or a specially trained member of the court staff may assist a child witness who is uncomfortable testifying in court. *People v. Rogers*, 800 P.2d 1327, 1329 (Colo.App.1990). Other states permit child witnesses to have another person present near the witness for emotional support during the witness's testimony. These persons may include foster parents, close relatives, and social workers. *Gadberry v. State*, 46 Ark.App. 121, 128, 877 S.W.2d 941, 945 (1994) (social worker); *Boatright v. State*, 192 Ga. App. 112, 115, 385 S.E.2d 298, 301 (1989)(foster parent); *State v. Reeves*, 337 N.C. 700, 727, 448 S.E.2d 802, 816 (1994)(stepmother); *State v. Johnson*, 38 Ohio App.3d 152, 154, 528 N.E.2d 567, 569 (1986)(relative); *State v. Dompier*, 94 Or.App. 258, 261, 764 P.2d 979, 980 (1988) (foster parent); *Commonwealth v. Pankraz*, 382 Pa.Super. 116, 126, 554 A.2d

974, 979 (1989)(grandmother). Congress has explicitly authorized the use of adult attendants to accompany a child while he or she testifies in federal trials. 18 U.S.C. § 3509(i) (2007).

■ Based on the record before us, there was nothing about the teenage sister's quiet presence that would unduly distract the jury, or would have been likely to prejudice the jurors against defendant. Thus, we conclude the court was within its discretion in allowing the sister to bring RW into the courtroom and to sit by her during her testimony.

Further, the court instructed the jury to make no inferences for or against either side from the teenage sister's presence. Absent evidence to the contrary, we presume the jury understood and heeded the trial court's instructions. *Copeland v. People,* 2 P.3d 1283, 1288 (Colo.2000).

C. Short Restriction on Courtroom Access

Defendant contends the trial court violated his right to a fair and public trial by restricting access to the courtroom during the girls' testimony. We disagree.

■ It has long been recognized that the public and the press have a qualified First Amendment right to attend a criminal trial. *Waller v. Georgia,* 467 U.S. 39, 44–45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The Sixth and Fourteenth Amendments of the U.S. Constitution and article II, section 16 of the Colorado Constitution guarantee persons accused of crimes the right to a public trial. *Gannett Co. v. DePasquale,* 443 U.S. 368, 379–80, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).

■ However, this right to a public trial is not absolute. We review decisions by trial courts to regulate courtrooms for an abuse of discretion. *People v. Angel,* 790 P.2d 844, 846 (Colo.App.1989).

■ It is well established that a trial court may, in the interest of justice, impose reasonable limitations on public access to a trial. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *People v. Angel,* 790 P.2d at 846. Restrictions are particularly supported where the case involves the testimony of young victims of sex crimes. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *see also Thompson v. People,* 156 Colo. 416, 427, 399 P.2d 776, 782 (1965) (trial court may exclude certain members of the public during testimony of child sexual assault victim).

■ To protect a defendant's right to a public trial, any closure of the courtroom requires: (1) the party seeking to close the hearing must advance an overriding interest likely to be prejudiced; (2) the closure must be no broader than necessary to protect the interest; (3) the trial court must consider reasonable alternatives to closing the hearing; and (4) the court must make findings adequate to support the closure. *Waller,* 467 U.S. at 48, 104 S.Ct. 2210. In applying this test, we recognize the defendant is not required to prove specific prejudice. *Id.* at 49, 104 S.Ct. 2210.

■ The record indicates RW was distracted by people entering and leaving the courtroom during her earlier testimony. The court ordered the doors closed during the girls' testimony to allow them to focus on the attorneys' questions. Any spectator who wished to view the testimony was required to be seated before the witness took the stand, and would not be permitted to leave until a recess. The court assured all parties it would "make sure that anyone that wants to come in may come in." An officer announced these instructions to spectators outside the courtroom.

The first *Waller* factor, the existence of an "overriding interest" justifying limitations on courtroom access, was satisfied here. Where, as here, the courtroom is only partially closed to the public, the Tenth Circuit has held there need only be a "'substantial' interest, rather than a 'compelling' one." *United States v. Galloway,* 937 F.2d 542, 546 (10th Cir.1991) (citing *Nieto v. Sullivan,* 879 F.2d 743 (10th Cir.1989)). Providing a young, distracted, and emotional witness with an environment designed to promote the witness's complete testimony satisfies either the overriding or substantial interest standards. *See, e.g., Davis v. Reynolds,* 890 F.2d 1105,

1110 (10th Cir.1989); *People v. Angel,* 790 P.2d at 846–47. In fact, closing a courtroom for child witnesses in physical or sexual abuse cases is expressly permitted in federal courts. 18 U.S.C. § 3509(e) (2007); *see also Williams v. Artuz,* 237 F.3d 147, 152–53 (2d Cir.2001) (limiting courtroom entry and exit during testimony is consistent with *Waller* where "[n]o person was denied access to the trial so long as he or she arrived at the courtroom door in time for the beginning of a court session").

The other three *Waller* factors were also satisfied. The trial court's actions were no broader than necessary to create an environment in which RW could provide her testimony. Rather than closing the courtroom to everyone, the court merely limited the flow of traffic in and out of the courtroom; no member of the public was excluded as long as he or she was seated before testimony began; an officer announced the court's decision to all those outside the courtroom, providing ample opportunity for spectators to make arrangements to attend; and the restriction was only in place for a short part of defendant's trial.

The court considered reasonable alternatives. The prosecution asked to close the courtroom to all persons. The trial court rejected this request and crafted a solution that allowed for interested persons, the public, and the press to be present during RW's testimony.

Last, although the trial court did not expressly refer to the *Waller* test, the trial court made sufficient findings "to support the closure." *Waller,* 467 U.S. at 48, 104 S.Ct. 2210. Failure to make findings does not require reversal. *United States v. Galloway,* 937 F.2d at 546 (more lenient standard for closure orders which only partially exclude the public). Here, there is evidence in the record of the court's observations about RW's distraction, and the court's reasoning in crafting a reasonable remedy to reduce this distraction.

Our review of the record indicates defendant received the safeguards of a public trial. *See United States v. Sherlock,* 962 F.2d 1349, 1357 (9th Cir.1989). Thus, we conclude the court did not abuse its discretion in restrict-

ing access to the courtroom. *See People v. Angel,* 790 P.2d at 845–47.

## IV. Child Hearsay

Defendant contends the girls were not competent to testify, the child hearsay statute is unconstitutional because the girls thus were not available to testify, and admission of their hearsay statements violated his Confrontation Clause rights. We disagree.

### A. Competency of Child Witnesses

Defendant claims the girls were not competent to testify. We are not persuaded.

The determination of a child witness's competency is addressed to the sound discretion of the trial court. *People v. Dist. Court,* 791 P.2d 682, 684 (Colo.1990). Absent an abuse of this discretion, we will not disturb this ruling on appeal. *People v. Estorga,* 200 Colo. 78, 83, 612 P.2d 520, 524 (1980).

Under section 13–90–106(1)(b)(II), C.R.S.2007, a child may testify in a criminal sexual abuse proceeding "when the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." *People v. Dist. Court,* 791 P.2d at 685. "[A] child need not be able to understand what it means to take an oath to tell the truth and need not be able to explain what it means to tell the truth in order to be judged competent to testify...." *Id.* A child can be competent to testify if he or she can tell the grade in school the child attends and the defendant's name, and is able to observe and relate facts accurately. *People v. Vialpando,* 804 P.2d 219, 224 (Colo.App.1990).

Here, the girls were able to convey the details of the events, identified defendant, and answered each question posed by both the prosecutor and defense counsel. While the girls had some difficulty articulating the concept of truth and lies, and gave some incorrect answers to questions on factual matters unrelated to the charged offenses, they were capable of differentiating between truth and lies by responding to examples. Thus, we conclude the court did not abuse its

discretion in finding the girls were competent to testify.

### B. Constitutionality of Child Hearsay Statute

Defendant claims the Colorado child hearsay statute, section 13–25–129, C.R.S.2007, is unconstitutional on its face and as applied in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). This argument is unavailing.

 Statutes are presumed to be constitutional. The party attacking a statute bears the burden of showing it is unconstitutional beyond a reasonable doubt. *People v. McIntier*, 134 P.3d 467, 474 (Colo.App.2005).

Here, defendant challenges the constitutionality of the statute, claiming the girls were unavailable because they were incompetent. However, because we have previously concluded the trial court did not abuse its discretion in finding the girls were competent to testify, there is no basis for concluding they were unavailable.

Because the girls were available and testified, the Sixth Amendment confrontation issue raised by *Crawford* does not apply here. *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. 1354 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (citations omitted)); *People v. Argomaniz–Ramirez*, 102 P.3d 1015, 1018 (Colo.2004)("*Crawford* does not affect the analysis for admission of out-of-court statements where the declarant testifies at trial."). Moreover, defendant's cross-examination of the girls was not so limited as to rise to the level of a violation of his confrontation rights, and defendant does not otherwise challenge the constitutionality of § 13–25–129.

Thus, defendant has not carried his burden of proving that section 13–25–129 is unconstitutional beyond a reasonable doubt.

### C. Admissibility of the Girls' Hearsay Statements

 Defendant also contends the court erred by admitting testimony about the girls' statements to others, and thus violated his rights under both the federal and state Confrontation Clauses. We disagree.

Defendant's Confrontation Clause argument fails because the child witnesses testified in this case. "Because the hearsay declarants [testified] at trial, and [were] subject to cross-examination, admission of their out-of-court statements [did] not violate the Confrontation Clause." *People v. Argomaniz–Ramirez*, 102 P.3d at 1018.

 We review the trial court's decision to admit child hearsay under section 13–25–129 for an abuse of discretion. *People v. Underwood*, 53 P.3d 765, 768 (Colo.App. 2002).

 Here, the trial court found the hearsay statements satisfied the requirements of section 13–25–129(1)(a), C.R.S.2007. The court's findings regarding the reliability of a child witness's out-of-court statements will not be disturbed on appeal if supported by the record. *People v. Trujillo*, 923 P.2d 277, 282 (Colo.App.1996). Although the trial court determines whether procedural guarantees are satisfied, the jury has the final determination of the statement's credibility. *People v. Cordova*, 854 P.2d 1337, 1339 (Colo. App.1992), *aff'd*, 880 P.2d 1216 (Colo.1994).

 After a thorough review of the testimony, we are not persuaded by defendant's claim, under CRE 403, that the prejudicial effect of the statements substantially outweighed their probative value. Because attacking the credibility of the child witnesses was the axis around which the defense spun, providing corroboration for their in-court testimony with the out-of-court statements was highly probative. Whatever prejudicial effect resulted from the admission of these statements was not unfair, nor was any unfair effect substantially greater than the probative effect. The admission of these statements was consistent with the purposes of section 13–25–129, and was not an abuse of discretion. *See Stevens v. People*, 796 P.2d 946, 951 (Colo.1990).

Defendant next argues that statements other than a very limited description of the specific sexual conduct alleged were outside the scope of evidence admissible under section 13–25–129. Specifically, he asserts the statute does not support the admission of testimony about the girls' reactions and emotional state when informing their grandmother of the events, their reactions to the events as recalled by their father and another uncle, and their answers to questions posed by law enforcement on the videotape.

■ While defendant raised objections to many of the hearsay statements made in court, he failed to object on the ground that the statements were outside the scope of evidence admissible under the statute. Issues not raised before the trial court are reviewed for plain error. *People v. Lanari*, 926 P.2d 116, 119 (Colo.App.1996). Therefore, the record must show the alleged error so undermined the basic fairness of the trial as to cast serious doubt on the reliability of the conviction. *Id.* at 119–20.

Evidence establishing the surrounding circumstances is often necessary to provide an adequate description of the alleged sexual conduct. *People v. Serna*, 738 P.2d 802, 804 (Colo.App.1987). Behavioral changes may be indicative of sexual abuse. *Stevens v. People*, 796 P.2d at 955–56. To the extent that some of the testimony beyond descriptions of the alleged sexual conduct in this case exceeded these acceptable purposes, its admission was not plain error, because it did not undermine the fairness of defendant's trial to the extent that we entertain serious doubts about the reliability of the convictions.

Defendant contends the court's decision to admit the girls' hearsay statements was based on inadequate findings. We are not persuaded.

■ The trial court must make specific findings regarding the admissibility of child hearsay statements before the statements are admitted into evidence. *People v. Bowers*, 801 P.2d 511, 518 (Colo.1990). Here, our review of the record indicates the court made sufficient findings that the girls' out-of-court statements, including videotapes of their statements, were reliable for the purposes of

section 13–25–129. Because we have concluded that the trial court did not abuse its discretion in admitting those statements, we reject defendant's contention that reversal is required because the trial court did not make findings about each statement individually.

## V. Expert Witness

Defendant submits the trial court erred in admitting the expert testimony of a therapist about the range of behavior demonstrated by child sexual assault victims. We do not agree.

### A. Discovery Violation

■ Defendant argues the prosecution committed a discovery violation under Crim. P. 16 and, therefore, the expert should not have been permitted to testify. Even assuming, without deciding, that there was a violation of Crim. P. 16, we conclude it did not prejudice defendant.

The prosecutor must provide reports or statements of experts to the defense "as soon as practicable but not later than thirty days before trial." Crim. P. 16(I)(b)(3). Here, the trial court established a timetable for creation and disclosure of a report from the expert, with which the prosecution complied. Although the expert's report was disclosed less than thirty days before the original trial date, the original trial was terminated when the trial court granted a mistrial. The report was disclosed well before the next trial, which resulted in the convictions that are the subject of this appeal, was held. Under these circumstances, any discovery violation was harmless. *See People v. Dist. Court*, 808 P.2d 831, 837 (Colo.1991) (continuance allowing time to interview new witnesses was sufficient to cure prejudice to defendant).

### B. CRE 702

■ A trial court has broad latitude in determining whether a witness is qualified to be an expert witness. *People v. Caldwell*, 43 P.3d at 667. We review a court's ruling on admitting expert testimony for abuse of discretion. *People v. Watson*, 53 P.3d 707, 711 (Colo.App.2001).

▮ Defendant argues the therapist gave generalized and unreliable testimony outside of the scope permitted by CRE 702. The focus of CRE 702 is whether the testimony will be helpful to the trier of fact, and whether the witness is qualified to give an expert opinion on the subject matter. *People v. Johnson*, 74 P.3d 349, 352 (Colo.App.2002).

▮ CRE 702 creates a liberal standard of admissibility, but expert testimony is still subject to CRE 403 assurances that the probative value is not substantially outweighed by the danger of unfair prejudice. *People v. Shreck*, 22 P.3d 68, 78 (Colo.2001). In reviewing the court's ruling, we afford the evidence the maximum probative value and minimum unfair prejudice. *People v. Johnson*, 74 P.3d at 353 (citing *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995)).

▮ Here, the therapist treated victims of sexual abuse for seventeen years, attended multiple workshops each year conducted by experts in the field, performed numerous presentations herself each year, organized training for law enforcement groups, was knowledgeable about the literature in the field, and testified in court as an expert over twenty-five times. These qualifications satisfy the expert witness threshold. *See People v. Perryman*, 859 P.2d 263, 268 (Colo.App. 1993).

▮ An expert's opinion is not admissible if the sole purpose of the testimony is to support the complaining witness's veracity. *People v. Snook*, 729 P.2d 1026, 1027 (Colo. App.1986), *aff'd*, 745 P.2d 647 (Colo.1987). However, testimony about children's general characteristics and their behavior is not the same as testimony supporting the veracity of their statements. *People v. Cordova*, 854 P.2d at 1340; *People v. Ashley*, 687 P.2d 473, 475 (Colo.App.1984). Such testimony should be permitted where the expert offers appreciable help to the jury. *Lanari v. People*, 827 P.2d 495, 502 (Colo.1992).

▮ Expert testimony about the general behavior of sexual assault victims is admissible. *People v. Carter*, 919 P.2d 862, 866 (Colo.App.1996). "Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of [young] children." *People v. Aldrich*, 849 P.2d 821, 829 (Colo.App.1992)(quoting *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984)).

We conclude the trial court did not abuse its discretion by finding that an expert's explanation of possible child behaviors and reactions would be helpful to the trier of fact and was admissible here.

Defendant also argues the therapist testified about information outside of her knowledge and experience. The trial court rejected this argument, and found mention of these other instances as helpful examples for the jury, and the probative value outweighed any prejudice. A division of this court has found similar remarks do not amount to error. *See People v. Morrison*, 985 P.2d 1, 5 (Colo.App. 1999), *aff'd*, 19 P.3d 668 (Colo.2000).

Defendant points us to no authority that persuades us that the use of examples by an expert to discuss general principles within his or her area of expertise amounts to reversible error. Also, the trial court instructed the jury that these examples were general in nature and not specific to the present case, thus limiting the potential prejudicial impact of this testimony.

### C. Reliability Hearing

Defendant asserts the trial court erred in failing to conduct a separate hearing before admitting the therapist's testimony under *People v. Shreck*. Again, we are not persuaded.

*Shreck* does not require trial courts to hold hearings to inquire into the reliability of evidence. *See People v. McAfee*, 104 P.3d 226, 229 (Colo.App.2004). Rather, *Shreck* requires the trial court to receive sufficient information to make specific findings about the reliability of the scientific principles involved and the expert's qualification to testify to such matters. *Shreck*, 22 P.3d at 77.

Here, the court ruled no reliability hearing was necessary because the expert was not testifying to scientific evidence and there was

no scientific technique that could be tested. However, the trial court made specific findings on the record that the expert testimony satisfied the requirements of CRE 403 and 702. Assuming, without deciding, that the trial court erred in ruling that a reliability hearing was not necessary because of the nature of the proposed testimony, we conclude the trial court's subsequent findings adequately satisfied the *Shreck* standard.

## VI. Prosecution's Closing Arguments

Defendant asserts the prosecutor made comments during her closing arguments that amount to reversible error. We do not agree.

Defendant claims the prosecutor acted improperly by: (1) telling a story about how members of a previous jury had regretted acquitting a defendant in a previous child sexual abuse case she had tried; (2) referring to an unrelated child murder case in Florida; (3) claiming she was "appalled" by defense counsel's arguments, she spoke for the victims, she knew the victims were telling the truth, and the defense was "twisting things"; and (4) referring to "a screening process" that occurs before a sexual assault case is filed.

The trial court denied defendant's motion that the prosecutor be prohibited from referring to the Florida case, described in the second comment, in closing argument. Defense counsel made contemporaneous objections to the first, second, and fourth comments.

■■■■ The determination whether statements during closing arguments constitute inappropriate prosecutorial argument is generally a matter for the exercise of trial court discretion. *Harris v. People*, 888 P.2d 259, 265 (Colo.1995). A prosecutor must remain within the ethical boundaries during closing argument or risk reversal. *Domingo–Gomez v. People*, 125 P.3d 1043, 1048 (Colo.2005). Prosecutors are granted wide latitude during closing arguments, but a closing argument cannot be used to mislead or unduly influence the jury. *Id.* at 1049; *Harris*, 888 P.2d at 265. A prosecutor should not make arguments that would divert the jury from deciding the case based on the evidence and inferences reasonably flowing from the evidence. *Harris*, 888 P.2d at 265 (analyzing ABA Standards for Criminal Justice, Prosecution Function and Defense Function § 3–5.8 (3d ed.1993)).

■■■■ Improper arguments also include those that tend to influence jurors based on preexisting biases, rather than the facts of the case. *People v. Dunlap*, 975 P.2d 723, 758 (Colo.1999). Additionally, closing arguments are not a time for expressions of personal belief as to the guilt of the defendant, opinions as to the truth or falsity of witness testimony, or remarks about personal knowledge of evidence unknown to the jury. For example, a prosecutor should not state that he or she believes the child victims of a sexual assault. *Domingo–Gomez*, 125 P.3d at 1049, 1053 (citing *Wilson v. People*, 743 P.2d 415 (Colo.1987)). In determining the propriety of statements, we consider "the language used, the context in which the statement was made, and any other relevant factors." *Id.* at 1051.

■■■■ The prosecutor made several improper comments during closing argument in this case. The story about how jurors in a previous child sexual assault case became upset because they acquitted that defendant even though they thought he was guilty diverted the jury's attention from deciding defendant's case based on the evidence presented at defendant's trial. *See Harris*, 888 P.2d at 265. The reference to the Florida child murder case invited the jurors to make a comparison to an irrelevant and prejudicial case. *See id.* at 266. The statements that the girls were "telling the truth" and that their testimony was not "a lie" were inappropriate expressions of a personal opinion about the girls' credibility. *See Domingo–Gomez*, 125 P.3d at 1051. The reference to the prosecution's pre-filing screening process "hint[ed]" that additional evidence supporting guilt exists and reveals the personal opinion of the prosecutor." *Id.* at 1052.

■■■■ Having concluded the comments were improper, we must evaluate them in the context of the evidence introduced at trial and the closing argument as a whole. Im-

proper argument that does not substantially influence the verdict or adversely affect the fairness of the proceedings is harmless. *People v. Knight,* 167 P.3d 147, 156 (Colo. App.2006).

Here, there were four improper comments, and the trial court overruled defense objections to three of them, which, in combination, makes the issue whether they were harmless close. However, after our careful review of the record, we conclude the statements were harmless because:

- They made up a small part of the prosecutor's closing argument, during which the prosecution fairly summarized the evidence, and provided reasons, based on the evidence, why the jury should believe the child witnesses. *See Domingo–Gomez,* 125 P.3d at 1053.

- All the statements were direct responses to comments made by defense counsel: (1) defense counsel, during opening statement, said there was no physical evidence to corroborate the girls' testimony; and a theory of the defense instruction, given to the jury, stated the lack of physical and medical evidence was inconsistent with their testimony; (2) defense counsel asked the therapist questions about an infamous California child sexual assault case, *McMartin v. County of Los Angeles,* 202 Cal.App.3d 848, 249 Cal.Rptr. 53 (1988), in the context of establishing that children have the capacity to make false allegations, and referred to the *McMartin* case in voir dire and in closing argument; (3) the theory of defense instruction contended the girls were "unreliable," and defendant's closing argument focused on their credibility; and (4) during voir dire, defense counsel suggested charges could be easily brought because there was no pre-charging screening process. *See People v. Brooks,* 950 P.2d 649, 654 (Colo.App.1997), *aff'd,* 975 P.2d 1105 (Colo.1999).

- The prosecutor made clear it was for the jury to determine the girls' credibility, making comments like, "Do you believe [the child witnesses]? That's what this case boils down to," and "If you believe the girls, you will find [defendant] guilty."

- When overruling two of defense counsel's three objections during the prosecutor's closing argument, the trial court stated, "[T]his is closing argument. It's not evidence."

- The trial court provided the jury with a proper credibility instruction. The jury was also given a second instruction, at defendant's request, which stated it was for the jury to determine the "weight and credit" to be given to the girls' testimony, informing the jury it "should consider" factors like their age, their maturity, the nature of their statements, and the circumstances in which the statements were made. *See id.*

We conclude the comments to which defendant did not object did not so undermine the trial's fundamental fairness as to raise substantial questions about the verdict's reliability, and, thus, were not plain error. *See People v. Knight,* 167 P.3d at 157.

## VII. Motion for Bill of Particulars

Defendant contends the trial court erred by denying his motion for a bill of particulars. We disagree.

Upon request, a court "may direct the filing of a bill of particulars." Crim. P. 7(g). In ruling on this request, "the trial court should consider whether the requested information is necessary for the defendant to prepare his defense or to protect against subsequent prosecution." *People v. Quintano,* 81 P.3d 1093, 1096 (Colo.App.2003), *aff'd,* 105 P.3d 585 (Colo.2005). The decision to grant or deny a request for a bill of particulars is vested in the sound discretion of the trial court, and its ruling will not be disturbed on review absent an abuse of that discretion. *People v. Laurson,* 15 P.3d 791, 797 (Colo.App.2000).

The felony complaint alleged defendant committed the offenses between January 1, 2003, and February 26, 2003. The prosecution provided the defense with complete discovery, including all the girls' pretrial statements. Defendant sought additional details about where and when the events

allegedly took place, and how many instances occurred. The prosecution responded by identifying the locations in the home where the events took place. Because of the girls' youth and their difficulty in pinning down exact dates, the trial court found the two-month period, during which defendant spent numerous overnights at the home, was particular enough to put him on notice of the charges he needed to defend.

We conclude the trial court did not abuse its discretion by denying defendant's request for a bill of particulars. It is not necessary to provide further details in a child sexual assault case if a defendant "was given the general time frame within which the assaults occurred" because a young child "cannot be expected to relay in detail the dates of the various incidents." *People v. Graham*, 876 P.2d 68, 73 (Colo.App.1994); *see Erickson v. People*, 951 P.2d 919, 922 (Colo.1998) (it is unreasonable to require exactitude from child witnesses involving repeated instances of abuse occurring over a prolonged period of time).

Defendant's assertion that the lack of specific dates precluded him from advancing an adequate alibi defense was rejected by the factually similar case of *Woertman v. People*, 804 P.2d 188, 191 (Colo.1991). Because defendant was regularly at the children's home and had unsupervised access to the children during the period of time when the acts are alleged, an alibi would not have been a viable defense. *See id.*

## VIII. Jury Misconduct

Defendant claims the court erred in denying his motion for a new trial after a jury member obtained a calendar in violation of the court's instructions. We disagree.

The decision of a trial court to grant or deny a new trial is a matter entrusted to the court's discretion and will not be disturbed on review absent an abuse of that discretion. *People v. Gallagher*, 194 Colo. 121, 124, 570 P.2d 236, 238 (1977); *People v. Wadle*, 77 P.3d 764, 766, 769 (Colo.App.2003), *aff'd*, 97 P.3d 932 (Colo.2004). In ruling on motions for new trial, however, trial courts are regularly called upon to resolve questions

of fact and apply standards of law. Where there is a mixed question of law and fact, we apply the abuse of discretion standard to the court's findings of fact, but review the court's conclusions of law de novo. *Wadle*, 77 P.3d at 767.

"[A]ny information that is not properly received into evidence or included in the court's instructions is extraneous to the case and improper for juror consideration." *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005). The use of extraneous information not admitted at trial, without regard to whether the court specifically forbade its use or not, is improper and amounts to misconduct. *Id.* at 624–25.

Here, the trial court denied the jury's request, during deliberations, for a calendar. The defense submitted information that, despite these instructions, one of the jurors accessed a calendar on his cellular telephone and provided it to other members of the jury.

There is no doubt that the use of the calendar by the jury was misconduct. However, such misconduct does not automatically require a reversal. *Wiser v. People*, 732 P.2d 1139, 1141 (Colo.1987).

A new trial is required "where there is a reasonable possibility that the verdict was tainted by the introduction of outside information or influences into the jury deliberations." *Id.* at 1143. "[T]he question whether there exists a reasonable possibility that extraneous communications with a jury influenced its verdict is a matter of law, to be resolved independently by a reviewing court." *Wadle*, 97 P.3d at 938. Thus, we review the application of the *Wiser* test de novo. *People v. Martinez*, 70 P.3d 474, 476 (Colo.2003).

The objective test does not require reversal of verdicts based on the jury's use of insignificant extraneous information. If the extraneous information is prejudicial to the defendant, there is reversible error. *Wadle*, 77 P.3d 764. If the extraneous information would not have resulted in prejudice to the defendant, the conviction will be upheld. *Wiser*, 732 P.2d at 1143.

■ We conclude there is no reasonable possibility that the calendar had any effect on the verdict. A calendar is not something subject to error, opinion, or interpretation, but rather a common, indisputable reference most jurors use on a daily basis. Courts routinely take judicial notice of calendars. Furthermore, use of a calendar to determine specific dates in this case would not prejudice defendant because the exact dates of the offenses were not alleged, and defendant's defense was one of general denial of the allegations.

Defendant argues the calendar's importance is evident because, after the jury's request had been denied, at least one juror found it significant enough to violate court instructions in order to access it. This argument misstates the *Wiser* test, because it suggests that all juror misconduct would be reversible error simply because a juror engaged in it.

### IX. Cumulative Error

Defendant argues his conviction should be reversed because of the cumulative effect of all the alleged errors in this case. We are not persuaded.

■ The doctrine of cumulative error requires that numerous errors be committed, not merely alleged. *People v. Rivers*, 727 P.2d 394, 401 (Colo.App.1986). A conviction will not be reversed if the cumulative effect of any errors did not substantially prejudice the defendant's right to a fair trial. *People v. Roy*, 723 P.2d 1345, 1349 (Colo.1986).

Here, we have rejected most of defendant's allegations of error, and we conclude that any errors we have identified, alone or in the aggregate, did not deprive defendant of a fair trial.

### X. Sentencing

■ Finally, defendant contends the court applied the wrong sentencing range during the sentencing hearing, and erroneously used defendant's claim of innocence and exercise of his right to silence against him. We disagree.

Defendant's two convictions for sexual assault on a child were subject to indetermi-nate sentencing. §§ 18–1.3–1003(5)(a)(IV)–(V) & (IX), 18–1.3–1004, C.R.S.2007. Thus, the trial court was required to sentence defendant to at least a lower term of the minimum of the presumptive range designated for those crimes, and an upper term of defendant's life. *See Vensor v. People,* 151 P.3d 1274, 1279 (Colo.2007).

The convictions were for class four felonies. § 18–3–405(2), C.R.S.2007. However, contrary to the trial court's conclusion, they were not extraordinary risk crimes, requiring an increase in the presumptive range. Ch. 318, sec. 2, § 18–1.3–401(10)(a), (b)(IV), (c) 2002 Colo. Sess. Laws 1400–01 (formerly codified at § 18–1–105(9.7)(a), (b)(IV); repealed effective Aug. 4, 2004, Ch. 200, sec. 1, 2004 Colo. Sess. Laws 633–37)(designation of enumerated sex offenses as extraordinary risk crimes applies "only to offenses committed prior to November 1, 1998"); *see People v. Marlott,* 191 Colo. 304, 309, 552 P.2d 491, 494 (1976) (defendant must be sentenced under statute in effect at time of commission of offense). Thus, the presumptive penalty range for a class four extraordinary risk felony was between two and eight years imprisonment. § 18–1.3–401(1)(a)(V)(A), (10)(a), C.R.S.2007.

The presence of a statutorily designated extraordinary aggravating factor, such as defendant's probationary status for another felony at the time of the commission of the offenses here, required the court to sentence defendant to a prison term of at least the midpoint of the presumptive range, but not more than twice the maximum of the presumptive range. § 18–1.3–401(8)(a)(III), C.R.S.2007. Thus, the sentencing range for the two class four felony crimes in this case consisted of a lower term between four and twelve years, and an upper term of defendant's life. Defendant's sentence of a minimum term of ten years to a maximum term of life is well within that range.

In reaching this conclusion, we do not accept defendant's argument that the trial court was not permitted to rely upon his probationary status at the time of the offenses in setting his sentence because defendant was being sentenced to an indetermi-

nate sentence under section 18–1.3–1004. This argument was rejected by the *Vensor* court's analysis of section 18–1.3–1004. *Vensor,* 151 P.3d at 1279–80.

■■ Defendant last contends the trial court erroneously considered his claim of innocence and exercise of his right to silence against him. We disagree.

■■ Where a defendant is silent at trial, but not at the sentencing stage, he waives his right to remain silent, and a court may consider what the defendant says and does not say. *People v. Villarreal,* 131 P.3d 1119, 1129 (Colo.App.2005).

Here, defendant made comments during the presentence evaluation demonstrating a lack of remorse for the crimes. The trial court noted defendant's lack of taking responsibility when issuing his sentence. Thus, under *Villarreal,* defendant waived his right to remain silent, and the trial court was entitled to consider his failure to accept responsibility for his crimes when evaluating his potential for rehabilitation. *See People v. Gagnon,* 997 P.2d 1278, 1284 (Colo.App.1999).

The judgment and sentence are affirmed.

Judge VOGT concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While in agreement with affirming defendant's conviction, I write separately to provide a broader perspective on the factors that, in my view, make reversal for prosecutorial misconduct an extremely close question.

"The hard fact is that sometimes we must make decisions we do not like.... [E]xcept in the rare case, we do not pause to express distaste for the result, perhaps for fear of undermining a valued principle that dictates the decision. This is one of those rare cases." *Texas v. Johnson,* 491 U.S. 397, 420–21, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (Kennedy, J., concurring).

No purpose would be served by repeating the law on this issue, which is accurately set forth by the majority. I address three areas

of what I consider to have been patently improper argument.

### I. Prior Jury Anecdote

Barely two pages into her rebuttal closing, the prosecutor said, "About 10 years ago I tried a sexual assault on a child case.... I noticed several jurors were crying when [the judge] read the [not guilty] verdict. So after the trial, I asked them, 'Why are you crying?'"

The trial court overruled defendant's objection, explaining, "This is closing argument. It's not evidence. And as long as the arguments conform to the evidence presented to the jury, that will be their decision to make."

The prosecutor then continued that the jurors had told her, "[T]hey truly believed that the defendant was guilty. But they felt they had to vote not guilty" because the defense had argued that the police did not collect forensic evidence from cushions on a couch. The prosecutor concluded the anecdote by saying, "So ever since then I have been telling jurors that story, an unfortunate story."

I believe that this argument was improper not merely because it distracted the jury from deciding the case based on the evidence presented, as the majority observes, but also because:

- Although the anecdote's persuasive value, if any, depends on its truth, the prosecutor described events for which no supporting evidence was introduced.
- The absence of evidence cannot be discounted because the anecdote merely conjured up, as a rhetorical device, an experience that most jurors would have shared, such as the consequences of becoming distracted while driving; rather, only a lawyer who tried criminal cases could have had such an experience.
- By the prosecutor's express admission, use of the anecdote was calculated, and thus cannot be excused as a statement blurted out in the heat of battle. Further, because no evidence supported the anecdote, the trial court's statement that "as long as the arguments conform to the evidence presented to the jury," was not responsive to defendant's objection.

## II. The Florida Murder Case

Defendant next objected when the prosecutor said, "Children are gullible and trusting. 11-year old Carly in Florida was led away to her death. . . ." The reference was to a rape-murder case that had received extensive national electronic media attention because video surveillance captured clear images of the victim being escorted from a shopping mall by her killer.

The court overruled defendant's objection, explaining, "There was testimony [by the prosecution's expert] so it will be overruled. Again, this is argument." (The court had earlier denied defendant's motion that no reference be made to this case in closing arguments.)

The prosecutor continued, "She was led away to her death by a complete stranger with astonishing needs."

I believe that this argument does far more than "invite[ ] the jurors to make a comparison to an irrelevant and prejudicial case," as the majority states. It also tells the jury, "Be wary, every perpetrator of sexual assault on a child is a potential murderer." This warning message strengthens because the prosecutor had already suggested that an acquittal might lead the jurors to feel "buyer's remorse," which would be especially distressing if the jurors acquitted defendant and next heard about him having killed a child.

The trial court's statement, "[T]his is argument," does not resolve the question of whether it is fair argument. I would conclude that it was not, and that the jury should have been so informed.

## III. The Screening Process

Defendant's final unsuccessful objection arose when the prosecutor stated:

> In voir dire, [the defense] tried to represent to you that there's no screening process when we file sexual assault cases. That's farther from the truth. Of course there's a screening process.

In overruling the objection, the court reminded the jury, "[T]his is argument. It's not evidence. And counsel are just reminded to keep their arguments in concert with the evidence that's been presented here."

Despite this admonition, the prosecutor continued, "We look at these charges. We don't file them willy-nilly. These are serious, serious charges."

As the majority correctly points out, reference to a screening process suggests both evidence of guilt beyond that presented to the jury and the prosecutor's opinion of the merit of the charges. In addition:

- Like the jury anecdote, the persuasive value, if any, of this comment depends on its truth, of which there was no evidence, even assuming that such evidence would have been admissible.
- The prosecutor's disregard of the admonition to stick to the evidence compels the conclusion that the prosecutor intended to drive this point home.
- The trial court abdicated its responsibility to tell the jury that the prosecutor's argument was improper.

In sum, controlling precedent provides no bright line test to determine when improper argument mandates reversal. Hence, while I accept my colleagues' conclusion that the foregoing argument was harmless error, such argument should not be condoned, and my acquiescence in affirming defendant's conviction does not condone it.